Good afternoon, Mr. Boyd. You may approach. Good morning, Your Honors. Andy Boyd from the State Appellate Defender's Office on behalf of the defendant and I, Johnny Gooch. I'm here to please the court and counsel. In this case, the defendant was tried before a jury, he was convicted of the offense of unlawful use of a weapon by a felon, and he was sentenced to 19 years incarceration. We've presented four issues on behalf of the defendant on this appeal. Today, I'd like to focus on two of those issues. I'd be happy, of course, to answer any questions that the court would have on any issue. Before I begin, I'd like to just give the court a brief overview of the two issues that we're going to focus on today. The first issue that we'd like to focus on today is whether the other crimes evidence should have been excluded at trial. This is the issue that we filed our motion to cite additional authority on, so we thought this might be a good place to start. The sole charge in this case against the defendant was unlawful use of a weapon by a felon. The state, however, was allowed to elicit testimony at trial from the arresting officer that the defendant was on parole, that the defendant was in possession of 13 small baggies of cannabis when he was pulled over, and that he gave a flip-off-the-cuff remark when he was asked about the cannabis. And also that he was going to be charged with possession of cannabis with intent to kill. The state also referred to this testimony during both their opening statements and their closing arguments. So our first argument is that the introduction of this testimony was improper because it was completely irrelevant to the sole charge defense, and we would also argue that this testimony was inadmissible because it should have been found to be unduly prejudicial and inflammatory towards the defendant. Now the second issue that we'd like to talk about today is whether the stop of the vehicle that the defendant was driving was reasonable. The defendant was pulled over by a Joliet police officer. Let me ask you a question before you get to the next issue. Wasn't that other crime evidence sort of appropriative of why the defendant told the police about the gun? That was what the trial court ruled, Your Honor. That's correct. The argument that we would make is that... I mean, otherwise it would be sort of illogical about the response about the gun. And that's the reason that we filed our motion to cite additional authority. We feel that the two cases we cited in that motion speak to that issue. The first of those cases is the Nunley case. And in that case, Your Honors, if I recall correctly, this was a situation where the defendant was originally... Now what case are you talking about? Nunley. The defendant was originally interviewed about the crime of aggravated battery against his mother. And there were some gruesome facts in that case, if Your Honors are aware of this case. And the telecourt in Nunley determined that, well, this aggravated battery should not have been admitted because it wasn't relevant to the charge defense. What happened in this case was the defendant was interviewed over this aggravated battery, and during the course of this interview, he confessed to a separate armed robbery and a murder. And in the Nunley case, the trial court made a similar determination to what the trial court made here, was that this initial arrest was relevant to why the defendant would have confessed to the second offense. And it's the second offense in Nunley that the defendant was actually charged with. So the situations in Nunley and in the Instant case are similar. And in Nunley, the court found that this evidence was so prejudicial that it shouldn't have been admitted, even though it was closely tied into why the defendant would have confessed. But Nunley also says that evidence of those kinds of acts should be strictly limited to what was necessary to explain the circumstances of the arrest, is that what Nunley says? That's correct, yes. So isn't that what we have here? Well, what we would argue, Your Honor, is that the state went beyond what was strictly necessary to establish why Mr. Guth would have confessed to the gun. It wasn't necessary, we would honor, for example, for the state to introduce evidence that the defendant was in possession of 13 separately packaged small bags of cannabis. The clear implication of that type of evidence is that the defendant is a drug dealer. Well, the defendant in this case is not charged with any crime related to his dealing drugs. He's charged with unlawful possession of a weapon by a felon. So we're arguing that the state overstepped its bounds, that the evidence was too much, so to speak. What seems to me, going to the question of prejudicial, even though it's about the circumstances of the arrest, is the fact that the very charge that he's being tried on is possession of a weapon by a felon. Right. Right? That's correct. So they obviously know that there was a prior conviction. Yes, but the parties presented a stipulation as to one of the defendant's prior felony offenses. So that was already covered by the stipulation. It wasn't strictly necessary for the state to present this evidence in order to establish the elements of the crime. The prior felony was stipulated to. So it wasn't necessary to establish that element of the crime. Now, the standard review on this would be an abuse of discretion. That's correct. And you have the trial judge weigh these factors. Right. Yes. So given the standard review, isn't this a difficult appeal for you? With the judge weighing all this and having a circumstance dealing with the arrest? Well, Your Honor makes a fair point, but we would argue that the culmination of all this other crimes are bad ass evidence. The fact that the defendant was on parole, the fact that the defendant was in possession, not just in possession of cannabis that would have been personal use type cannabis, but 13 separately packaged packages of cannabis, and that the defendant gave this flip off the cuff remark about the cannabis. When the court looks at that as a whole, the court, in our view, perhaps should find that this evidence was unduly prejudicial. Even though the trial court did find in its discretion that it was relevant to explain why the defendant would have confessed to the gun, our argument is that the sum total, so to speak, of this evidence, when looked at in its entirety, was unduly prejudicial. And then back to Nunley, this case certainly is one of the exceptions that Nunley talks about, about the circumstances of an arrest. Yes. Yes. That's correct, Your Honor. Okay. Thank you. The second issue that we were going to present today is the issue of whether or not this vehicle stop of the vehicle that the defendant was driving was reasonable. The defendant was pulled over by a Joliet police officer for the sole reason that he was driving a vehicle, and the vehicle that he was driving was owned by his girlfriend, whose license was suspended. And we'd argue that this stop, under the circumstances, was unreasonable. We do understand that the case law says that police officers are allowed to presume that the owner of the car is its driver. But what we would argue is that, number one, under the specific circumstances of this case, the stop was unreasonable. We'd also argue that, in general, this court should take a look at whether or not this presumption is something that's a good presumption for policy reasons. And the first thing I'd like to address on that argument is the policy reasons. Now, on this issue, the defense counsel at trial did not argue the position you're taking. In fact, they said their initial stop was okay. Well, what happened, Your Honor, was that during the motion, in the written motion to suppress, the defense counsel brought up the issue of whether the stop was proper. During the hearing on the motion to suppress, the prosecutor pointed out that the basis of the motion was initially that there wasn't any reason to stop the vehicle. And then the prosecutor went on to argue why there was a reason to stop the vehicle. And at that point, the defense counsel did concede, based on what the prosecutor had said, the case law that the prosecutor had cited, that, well, there was reason to stop the vehicle. But what we would argue is that this argument was raised in the first instance. In fact, the prosecutors acknowledged that it was raised in the first instance. Yes, the defense counsel conceded the issue. But the trial court went on to express the rule that the stop was reasonable. So we would argue that this was raised at the trial level. Even though it was conceded? Even though it was conceded, it was raised in the first instance. The prosecutor acknowledged that, and the court went ahead and actually made an express ruling on that issue. Of course, that could be tied into the concession, I guess. But do you have some case law on that that you can concede and then it's still raised? No, Your Honor, I do not. Because otherwise, if it is not raised, then you've got a plain error issue. You're honest, Your Honor. And this isn't a case where it was closely balanced as far as the underlying charge. The underlying charge being the unlawful possession of a weapon. I think we can make an argument that there was evidence presented that this was not the defendant's weapon. The weapon was not found on the defendant's person. It was found in his girlfriend's apartment. The party stipulated that the weapon was registered to the defendant's brother. The defendant's brother actually took the stand and stated that it was his gun. And he also stated that he gave it to the defendant's girlfriend for safekeeping. So I think we can make a reasonable argument that there was some evidence presented that this was not the defendant's. So I think we could make a fair argument that the evidence was closely balanced in this case. And we did argue that kind of claim, Your Honor. By conceding the issue, though, it limits the record that we have on appeal. Because I can see the logic in your argument that when the officer learns the driver, the registered owner, the presumed driver is a female and there's a man behind the wheel, maybe that would extinguish probable cause. But we have to have some factual record that the appearance of the person behind the wheel would have negated this information that it was a female. And I'm trying to be delicate about it, but there are some men that maybe in profile would look feminine. And Your Honor is correct. We don't have that evidence in the record as to what Mr. Gutz's hairstyle was. We don't know. We don't know that. What we would submit, Your Honor, is in the general course of events, it's fairly easy to distinguish a male from a female. But we don't know in this case. We don't know. That's what the concession does. It's destroyed our ability to test that theory. Any response to that? I guess all I can do is I would have to concede, first of all, that there isn't any evidence in the record as to what Mr. Gutz looked like. What his physical appearance was, the record is silent to that. But there's plenty of case law, and we cited even some out-of-state case law, when it should be apparent to the officer that the registered owner is a female and the driver is a male or vice versa. What about the argument that the name itself isn't really indicative of gender and the officer would have had to go one step farther, get more information, other than just the name? Well, first of all, the officer testified that he didn't know that Giselle was a female. And the trial court made a determination that the officer testified credibly. So we wouldn't want to argue that the officer didn't testify credibly on that. If the officer stated under oath that he didn't know whether Giselle was a male or female name and the trial court found that credible, then that's the case. To me, that supports an inference that the officer saw a man, felt it was a man, and didn't make the correlation that the name was female. I agree with Your Honor, but part of our point is that... I'll show you two minutes. And you can move on. I don't want to tie up all your time on this issue. Well, but I'll be happy to answer Your Honor's question the best I can. What we would argue is that for this officer to simply determine that the driver, excuse me, the owner of the vehicle's license is suspended, and then look at this name and say, well, I don't know if it's a male or female, and at that point stop his investigation, not pursue any other, not try to determine any other facts as to whether the driver was a male or a female, that's what this closed court says that the officers aren't supposed to do. The officers are not supposed to ignore facts. Did you say the closed court? Yes, closed. Great case. Great decision. And these out-of-state cases that we cited also say that absent information Yes, it's reasonable to suspect that the driver's the owner. But here what we're arguing is that it's not enough. It simply makes it too easy for a number of different policy reasons, which we stated in our briefs. It simply makes it too easy for police officers to... Don't dispute your contentions at all. I'm just afraid we don't have the record to draw the conclusion from this case because of the concession. That's what I'm struggling with. But you've addressed my concerns. So, thank you. If there's no other questions, Your Honors, I have completed my presentation. I have one other question about policy balance. Please. The Supreme Court of Illinois has seemed to, in the recent year, much more restrictive on plain error analysis. For example, in a very recent case that came down within the last two weeks, People v. Adams, which dealt with closing arguments, they dealt with the situation where the appellate court, that was this court, found that there was error and it was a forfeited matter, so there was a plain error analysis, and this court found it to be closely balanced. And the Supreme Court said, well, you could say logically there might be a competing, and I'm paraphrasing, competing testimony, but as a practical matter, it's not closely balanced. It weighs heavily in favor of the state. It's sort of a different take on the prior closely balanced approach. And so in light of Adams, I mean, it appears to me it makes it harder to argue some of these closely balanced cases. Are you familiar with Adams? Maybe I'm being unfair, but Adams just came out in the last couple weeks. I have to concede that I am not, but what I would say is, I suppose closely balanced depends on one's point of view. From my humble point of view, the evidence in this case was closely balanced because there was, from our point of view, a significant amount of evidence that was presented to the court that this was not the defendant's gun, that it was, in fact, his brother Victor's gun. And that was stipulated, too, that Victor had that. It was stipulated, too, that the gun was registered to the victim. That's correct. I guess you could say it's in the eyes of the beholder of the other case. I thought it was closely balanced, yes. Others didn't agree. Thank you, Your Honor. Which happens a lot. Mr. Hanson, you may approach. Good morning, Your Honor. May it please the court, counsel. I, too, will just address the two points my opponent raised. Largely, I'm quite willing to rely on my brief. I'll just highlight a few points that I would prefer to emphasize. As to the second issue about the other crimes evidence, the standard is abuse of discretion, and there was none here. It went to why the defendant offered to show the police where the gun was, the basis for the charge at issue. It's unusual for a defendant to blurt out information like that. This evidence of other crimes was thus necessary to explain it. I think Justice Carter probably was referring to that in his question. Evidence of other crimes is admissible for any purpose but to show the propensity of the defendant to commit a crime. The other purpose was in there, and that's why the defendant cited additional authority, no problem, you allowed it. But, again, they cite the law as we cite it to be any purpose other than propensity. And there's law on their side in our brief that says the appellate court should give a good deal of deference to the trial judge's discretion in evaluating the admissibility of evidence. The judge found it admissible. He said that the defendant possessed cannabis and was on parole to explain this unusual scenario. The judge gave full weight to the defendant's argument on this point. He heard the defendant's argument about the prejudicial aspect, and then he specifically addressed it, noting the jury already knew the defendant was a felon. He was charged with unlawful use of a weapon by a felon. Two, assuming any error, it was harmless. The defendant admitted he knew the location of the gun. He admitted he had the gun in a safe in his girlfriend's apartment, where he often stayed. He gave the police the combination of the safe, and he admitted owning the gun. As to the second issue, which was the first one raised on appeal, the reasonable suspicion to stop this vehicle, there's a presumption that the driver of the vehicle is the owner. And, again, this is very redundant with my brief, Your Honor, and I won't recite the whole darn argument, but just about seven or eight highlights. The officer can stop a vehicle when he has information that the owner of the vehicle is without a license. The defendant has the burden of proof, which we argue, of course, he didn't meet here, regarding the unlawfulness of the stop. Any vagueness in the record, which we, of course, argued here, as to the name and sex of the registered owner, must be under standard principles cited in my brief construed against the defendant.  He did not know this to be a female name. He had to look at his computer screen and drive. He just saw, quotes and quotes, suspended, and that's why he stopped. He was contemplating stopping a car for which he believed the driver-owner was suspended. He wasn't giving a male-female analysis. And I point out, you know, in my brief, that there are different spellings of the word Giselle. Who knows which is correct? One is just a court reporter's spelling. There's no indication it was spelled out for her. The defendant, in stating the name Giselle, spells it differently. But I point out, you know, there was a football player for the Pittsburgh Steelers named Lynn Swan. That's a guy. There's an actor named Leslie Nielsen, who's male. I have a cousin named Leslie, who's a female. Again, at the risk of redundancy in my brief, I talk about the old Johnny Cash song, A Boy Named Sue. It can happen. The name was hardly determinative of sex here. Two, at the hearing on the motion to quash and suppress, defense counsel admitted, and this was brought out earlier, that the officer had a reason to stop the vehicle. In essence, he conceded this issue. Then she made an argument that the officer made a new stop once the defendant gave him an identification, which argument is not made on appeal. The instant claim is thus defaulted. And in the defendant's initial brief, although he raises it in his reply brief, in his initial brief he made no plain-error argument. The officer had no reason to think the owner of this vehicle was female and thus not have stopped it. The judge said he believed the officer. He found no reason for the officer to have known this was a female name. The officer had a reasonable suspicion here, under the law cited in my brief and the facts, that the owner-slash-driver of the vehicle was unlicensed, ergo this is a good stop. As to the policy reasons, I just simply, you know, to discard the presumption that the owner of the vehicle is its driver. With all due respect, Your Honor, I think that's an argument made more properly to the Supreme Court, not an intermediate appellate court. Usually speaking, the driver is the owner, so there's no big policy reason in that regard. There's no evidence that this is a significant problem or even a problem at all. And there's no evidence that the officer here acted any way other than reasonably. Ergo, I believe the policy argument fails. Thank you, Your Honor. Let's imagine it's age rather than gender, and the registered owner of the car is 82 years old, and the person behind the wheel is obviously blonde-haired, blue-eyed female. It's probably a different situation. Teenager. Yeah, but the officer here just said it was hard to look, and it depends what the officer says, too. Yeah, that's the trouble. And, Judge, I am terrible at multitasking, and I think most of the world is pretty bad at multitasking. I live in Peru. Every day when I drive home, I am seeing cars turning erratically, specifically up here at Route 6 as I go to head west. And it's because they're on a cell phone doing something, and they're being insufficiently inattentive to their driving. So here's a cop who has word of unlicensed on him, and he's a cop, so he's got to turn the lights on, he's got to concentrate on pulling the person over. It seems just absolutely credible to me that often he wouldn't know. Now, in your case, it depends. If he says, yeah, I saw on there the person was 82, then we have a different situation. And CLOS stands for the proposition that the officer can rely on the information provided by Leeds. If it says he's suspended. Yes. The officer can rely on that, but the officer can't ignore other information. CLOS doesn't go that far. If CLOS says he's an 82-year-old... Oh, I'm not saying he should ignore other information, Your Honor, no. You're saying that if he doesn't notice. If he doesn't notice, yeah, and that was the evidence here. Yeah, this could well have been a different case if the officer said, you know, I knew, you know, based on knowledge of parties, I knew the purported owner, Giselle, whatever Giselle's last name was, and I knew that was not Giselle in the car. Then we'd have a different situation. We can conjure up all sorts of factual scenarios. Fortunately for me, we have the one at bar. Thank you. Thank you, Your Honor. Thank you. Your Honor, just a couple of points on rebuttal. First, as to the other crimes issue, counsel argues that this other crimes evidence was admitted as relevant in order to explain why Mr. Goose would have confessed to owning this gun. And what we argue is that there wasn't any need for the amount of evidence that was presented as to these other crimes or bad acts. There wasn't any need, for example, to explain that Mr. Goose was on parole. There wasn't any need to explain that he had 13 separately bagged, small baggies of cannabis that presumably would have been available for sale. There wasn't any reason to introduce the flip remark about the possession of cannabis. All these things, when taken together, go far beyond, in our view, what would have been sufficient to explain why Mr. Goose confessed to the gun. As to counsel's second contention, as to this other crimes evidence, we would submit that this other crimes evidence is not harmless. In fact, the Lindgren court and the subsequent courts that cited the Lindgren have clearly stated that other crimes evidence can be extremely prejudicial and ordinarily calls for reversal. As to the argument about the presumption that officers are allowed to make that the owner of a vehicle is its driver, what we would argue here is that the essential problem is that there wasn't, in this particular case, there wasn't any effort made by this police officer to determine whether or not the driver of the car was its owner. And the officer stated as much in the motion to suppress. He said, as soon as I saw that the registered owner of this vehicle had a suspended driver's license, I hit the lights and I stopped this car. What we're arguing, Your Honors, is that what this presumption does, not only does it allow officers to ignore facts that would dispel suspicion of wrongdoing, in fact, it encourages officers to do that. It encourages officers not to look any further into the facts of any given situation. All a police officer has to do is to determine that the registered owner of a vehicle's license is suspended, and this officer hits the lights, and we have a seizure. And the officer is allowed to do this under the presumption, and in fact even encouraged to do this by this presumption. And that, Your Honors, we would argue simply makes it too easy for officers to seize individuals. If there's no other questions, that would conclude my presentation. Thank you very much for your time, Your Honors. Thank you. We thank you both for your arguments, which were well presented today. We're going to be taking the matter under advisement, and we're going to be back in a little bit.